Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/09/2020 09:08 AM CDT

State of Nebraska, appellee,
v. St. Thomas F. Cramer,
appellant.

___ N.W.2d ___

Filed June 2, 2020.    No. A-19-572.

1. **Rules of Evidence: Appeal and Error.** Where the Nebraska Evidence
   Rules commit the evidentiary question at issue to the discretion of the
   trial court, an appellate court reviews the admissibility of evidence for
   an abuse of discretion.
2. **Trial: Rules of Evidence.** A trial court exercises its discretion in deter-
   mining whether evidence is relevant and whether its prejudicial effect
   substantially outweighs its probative value.
3. **Judgments: Words and Phrases.** An abuse of discretion occurs when a
   trial court's decision is based upon reasons that are untenable or unrea-
   sonable or if its action is clearly against justice or conscience, reason,
   and evidence.
4. **Rules of Evidence.** Evidence that is admissible may be excluded under
   Neb. Rev. Stat. § 27-403 (Reissue 2016) if its probative value is substan-
   tially outweighed by the danger of unfair prejudice.
5. **Evidence.** The probative value of evidence involves a measurement of
   the degree to which the evidence persuades the trier of fact that the par-
   ticular fact exists and the distance of the fact from the ultimate issue of
   the case.
6. ____. Most, if not all, evidence offered by a party is calculated to be
   prejudicial to the opposing party.
7. **Trial: Evidence.** Balancing the probative value of evidence against the
   danger of unfair prejudice is within the discretion of the trial court.
8. **Statutes.** Basic principles of statutory interpretation require a court to
   give statutory language its plain and ordinary meaning.
9. ____. Basic principles of statutory interpretation prohibit a court from
   reading a meaning into a statute that is not there or reading anything
   direct and plain out of a statute.

Appeal from the District Court for Hall County: MARK J. YOUNG, Judge. Affirmed.

Mark Porto, of Porto Law Office, for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

MOORE, Chief Judge, and RIEDMANN and WELCH, Judges.

RIEDMANN, Judge.

## INTRODUCTION

St. Thomas F. Cramer appeals his convictions in the district court for Hall County of two counts of first degree sexual assault. Finding no merit to the arguments raised on appeal, we affirm.

## BACKGROUND

Cramer was charged with three counts of first degree sexual assault under Neb. Rev. Stat. § 28-319(1) (Reissue 2016). The operative information alleged that on or between April 1 and August 31, 2017, Cramer subjected M.D. to sexual penetration without the consent of the victim in violation of § 28-319(1)(a) or being a person of 19 years of age or older, subjected a person of less than 16 years of age, but at least 12 years of age, to sexual penetration in violation of § 28-319(1)(c).

Prior to trial, Cramer filed a motion in limine seeking, in part, to exclude from evidence at trial an email exchange between Cramer and M.D. from June 2017. He argued that any relevance the emails may have was substantially outweighed by the danger of unfair prejudice and that therefore, they should be excluded from evidence pursuant to Neb. Rev. Stat. § 27-403 (Reissue 2016). After holding a hearing, the district court reserved ruling on the motion until it could hear the evidence presented at trial.

At trial, the State elicited evidence that M.D. was born in November 2003 and that Cramer was born in September 1996. The evidence established that Cramer was distantly

related to M.D. through a prior marriage of his father's and that Cramer played a role similar to that of an uncle to M.D. M.D. testified and described three specific instances where Cramer subjected her to sexual penetration against her will at her residence located in Hall County, Nebraska.

During M.D.'s testimony, she identified the emails between her and Cramer from June 2017. The email exchange begins in the afternoon of June 28 and includes numerous messages back and forth between Cramer and M.D., concluding around 3 a.m. on June 30. The messages portray that Cramer and M.D. have a friendly relationship and occur while Cramer was driving from Iowa to M.D.'s house in Nebraska. According to the messages, Cramer was planning to go to M.D.'s bedroom when he arrived at her house, and they were waiting for her stepfather to go to bed. M.D. testified that Cramer did go to her bedroom at that time, which was when the third sexual assault occurred. When the State offered the emails into evidence, Cramer objected. The court excused the jury so the matter could be addressed outside its presence.

Cramer noted that the evidence that had been presented at trial indicated that he had subjected M.D. to sexual penetration without her consent and that she had not willingly participated. He argued that the emails were inconsistent with evidence of forced intercourse (in that they could be interpreted that any interaction was consensual); thus, there was a substantial risk that the jury would read into the emails exactly the opposite of M.D.'s version of events. He therefore believed that the risk of undue prejudice far outweighed the relevance. The State argued that the emails were relevant to the charges and noted that Cramer had been charged under both § 28-319(1)(a), sexual penetration without M.D.'s consent, and § 28-319(1)(c), penetration when Cramer was 19 years of age or older and M.D. was at least 12 years of age but less than 16 years of age.

The court observed that the State had charged both penetration without consent and what is commonly referred to

as "statutory rape." It found that the emails were material and relevant and that their relevance outweighed any undue prejudice. The court first reasoned that the State could offer evidence as to either of the two theories it charged and that the emails were relevant to the statutory rape charge. In addition, the court explained that although the emails would tend to suggest M.D. voluntarily let Cramer into her bedroom, the State was permitted to offer evidence that would corroborate that something occurred between the two of them in the bedroom whether it was voluntary or not; in other words, although M.D. may have allowed Cramer into her bedroom voluntarily, that does not mean she voluntarily participated in the sexual intercourse she claimed occurred there. The court therefore overruled Cramer's objection.

Cramer testified in his own defense and denied engaging in any sexual acts with M.D. He claimed that he arranged to go to M.D.'s room late at night so they could privately discuss concerns she had about her stepfather.

The jury ultimately found Cramer guilty of two of the charges. He was sentenced to 10 to 15 years' imprisonment for each offense with the terms to run concurrently. Cramer appeals.

## ASSIGNMENT OF ERROR

Cramer assigns that the district court abused its discretion in admitting the email correspondence into evidence over his objection pursuant to § 27-403.

## STANDARD OF REVIEW

[1-3] Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, we review the admissibility of evidence for an abuse of discretion. *State v. Stubbendieck*, 302 Neb. 702, 924 N.W.2d 711 (2019). A trial court exercises its discretion in determining whether evidence is relevant and whether its prejudicial effect substantially outweighs its probative value. *Id*. An abuse of discretion occurs when a trial court's decision is

based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id*.

## ANALYSIS

Cramer argues that the district court abused its discretion in overruling his objection to the emails and admitting them into evidence at trial. He claims that the emails were unfairly prejudicial and should have been excluded under § 27-403.

[4] Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. § 27-403. As the rule plainly states, only when the danger of unfair prejudice substantially outweighs the evidence's probative value does § 27-403 counsel exclusion, and we review the decision only for an abuse of discretion. *State v. Thomas*, 303 Neb. 964, 932 N.W.2d 713 (2019).

[5-7] The probative value of evidence involves a measurement of the degree to which the evidence persuades the trier of fact that the particular fact exists and the distance of the fact from the ultimate issue of the case. *Id*. Most, if not all, evidence offered by a party is calculated to be prejudicial to the opposing party. *Id*. Only evidence tending to suggest a decision on an improper basis is unfairly prejudicial. *Id*. Balancing the probative value of evidence against the danger of unfair prejudice is within the discretion of the trial court, whose decision we will not reverse unless there is an abuse of discretion. *Id*.

In this case, Cramer argues that the emails were unfairly prejudicial because they undermined the notion that he subjected M.D. to sexual penetration without consent under § 28-319(1)(a) and invited the jury to infer that he and M.D. engaged in sexual intercourse that, although consensual, nevertheless was a crime under § 28-319(1)(c). He claims that penetration without consent in violation of § 28-319(1)(a) was the sole theory the State presented at trial and that because the emails were the only evidence presented that would support a

conviction under § 28-319(1)(c), they were unfairly prejudicial. We disagree.

As relevant here, § 28-319(1) provides that any person who subjects another person to sexual penetration (a) without the consent of the victim or (c) when the actor is 19 years of age or older and the victim is at least 12 years of age but less than 16 years of age is guilty of sexual assault in the first degree. In all three counts in the operative information, the State charged Cramer with violating § 28-319(1)(a) or § 28-319(1)(c), and it proceeded to trial based on the theories charged. In its preliminary instructions to the jury, the court advised the jury of the charges, including that Cramer subjected M.D. to sexual penetration when he was 19 years of age or older and she was at least 12 years of age but less than 16 years of age. In its opening statement, the State informed the jury that it expected the evidence to show that M.D. was 13 years old at the time of the assaults and that Cramer was 20 years old. The State elicited testimony from the investigating officer, M.D.'s mother, and M.D. to support its statements regarding the parties' ages. Similarly, in its closing argument, the State argued that the evidence showed M.D. was 13 years old and Cramer was 20 years old when the sexual assaults occurred and that it is "illegal for a 20-year-old to have sex with a 13-year-old, whether it was consensual or not consensual."

Furthermore, jury instruction No. 3 instructed on the elements of the crimes and, for each charge, provided that the elements of the charges are that Cramer subjected M.D. to sexual penetration when he was 19 years of age or older and when M.D. was at least 12 years of age but less than 16 years of age or that Cramer subjected M.D. to sexual penetration without her consent. Cramer made no objection to the jury instruction.

Thus, contrary to Cramer's argument, the State's theory of the case included both § 28-319(1)(a) and § 28-319(1)(c) and it presented evidence at trial in support of both charges. As such, any evidence that would tend to show that Cramer

subjected M.D. to sexual penetration without her consent or that he subjected her to sexual penetration when he was 20 years old and she was 13 years old would be relevant and not unfairly prejudicial.

Cramer also argues that the emails were unfairly prejudicial because they were the only evidence that would support a conviction under § 28-319(1)(c), which he claims contemplates penetration with the victim's consent but for the fact that the victim is not old enough to provide legally recognized consent. He argues that "the Legislature has clearly distinguished between those circumstances in which a minor who is unable to provide legally-recognized consent nevertheless engages in intercourse willingly" (§ 28-319(1)(c)) versus those situations in which the victim is subjected to penetration without his or her consent (§ 28-319(1)(a)). Brief for appellant at 11. For support, he directs our attention to *State v. Valdez*, No. A-15-818, 2016 WL 1358899 (Neb. App. Apr. 5, 2016) (selected for posting to court website). Cramer's citation to *Valdez* violates Neb. Ct. R. App. P. § 2-102(E)(4) (rev. 2015), which states that opinions not designated for permanent publication "may be cited only when such case is related, by identity between the parties or the causes of action, to the case then before the court." Therefore, we address his argument without reference to *State v. Valdez, supra*.

[8,9] To the extent Cramer argues that a conviction under § 28-319(1)(a) is inconsistent with a conviction under § 28-319(1)(c), we disagree. Consent is not relevant to a charge under § 28-319(1)(c) based on the plain language of the statute. Our basic principles of statutory interpretation require us to give statutory language its plain and ordinary meaning. *State v. Schmaltz*, 304 Neb. 74, 933 N.W.2d 435 (2019). Those same principles prohibit us from reading a meaning into a statute that is not there or reading anything direct and plain out of a statute. *Id*.

As noted above, § 28-319(1)(c) provides that any person who subjects another person to sexual penetration when the

actor is 19 years of age or older and the victim is at least 12 years of age but less than 16 years of age is guilty of sexual assault in the first degree. The plain language of this statute requires simply that the State prove that the defendant subjected the victim to sexual penetration and that the ages of the defendant and the victim fit within the statutory ranges. This subsection of § 28-319(1) says nothing about the consent or lack thereof of the victim, and the basic principles of statutory interpretation prohibit us from reading a meaning into the statute.

Moreover, in a previous case where the defendant was convicted of violating § 28-319(1)(c), the Nebraska Supreme Court stated that neither consent nor force was an element of the crime charged. See *State v. Vicars*, 207 Neb. 325, 299 N.W.2d 421 (1980). As such, any willingness on the part of the victim is irrelevant to a determination of whether a defendant violated § 28-319(1)(c). Accordingly, a jury could find that conduct satisfies both § 28-319(1)(a) and § 28-319(1)(c) upon sufficient proof that sexual penetration occurred without the consent of the victim and that the requisite age requirements were satisfied.

It logically follows, therefore, that M.D.'s testimony that all penetration Cramer subjected her to was forced upon her does not negate a finding that Cramer also violated § 28-319(1)(c). The State adduced evidence from M.D. that Cramer subjected her to sexual penetration and also elicited evidence of the ages of Cramer and M.D. at the relevant times. Consequently, the emails between Cramer and M.D., even if they tended to show a friendly relationship between the two, were not the only evidence presented in support of § 28-319(1)(c), were relevant to the theories presented at trial, and were not unfairly prejudicial. Furthermore, to the extent that Cramer argues that the receipt of the emails was contrary to a charge of penetration without consent because they were of a "somewhat flirtatious nature," brief for appellant at 15, we reiterate that Cramer was charged under both

§ 28-319(1)(a) and § 28-319(1)(c); therefore, regardless of whether M.D. was a willing participant (which she denied), the emails were relevant and not unfairly prejudicial. We also point out that M.D. was questioned regarding the content of the emails and explained that she felt compelled to be "nice" or he "would make it more than one time a day, make it more rough," which would further support a determination that penetration was without consent.

As a result, the district court did not abuse its discretion in overruling Cramer's objection and admitting the emails into evidence at trial.

## CONCLUSION

We find no abuse of discretion in the district court's decision to allow the emails between Cramer and M.D. into evidence at trial over Cramer's objection. Cramer's convictions and sentences are therefore affirmed.

AFFIRMED.